IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER M. SLOAN** <br> *Plaintiff* <br><br> **VS.** <br><br> **GARY HARVEY AND DAVID PIPER** <br> *Defendants* | § § § § § § § § § § | <br><br><br> **CIVIL ACTION NO._____** <br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **CHRISTOPHER M. SLOAN**, referred to herein as Plaintiff, complaining of Defendants **GARY HARVEY AND DAVID PIPER** ("Officers"), in their individual capacities, hereinafter called Defendants, and for cause of action, would respectfully show unto the Court and jury the following:

### I.
### NATURE OF THE CASE

**THE CLAIM:** Former City of Ingleside police officers GARY HARVEY AND DAVID PIPER used excessive force against CHRISTOPHER M. SLOAN in violation of his individual rights under the Fourth and Fourteenth Amendments to the United States Constitution when they illegally and brutally pepper sprayed him on 27 February 2021, without factual or legal cause to do so, after arresting him for Public Intoxication, a Class C misdemeanor offense. This violence occurred while Mr. Sloan was restrained in a holding cell in the City of Ingleside Jail. Mr. Sloan's injuries resulted directly and only from this clearly excessive use of force; and the excessiveness of that

1

force was clearly unreasonable. The actions alleged herein are of such a nature as to shock the conscience and are cruel and unusual in their oppressiveness.

## II.
## PARTIES

1. Plaintiff, **CHRISTOPHER M. SLOAN** is a resident of the state of Florida.
2. The **CITY OF INGLESIDE, TX** is a political subdivision of the State of Texas and the CITY OF INGLESIDE, TX Police Department is an agency operated thereunder.
3. The CITY OF INGLESIDE, TX Police Department is funded and operated by the CITY OF INGLESIDE, TX City Council. Mayor Oscar Adame is the chief executive of the CITY OF INGLESIDE, TX.
4. Mayor Adame or any individual acting as Mayor Pro Tem, is responsible for implementing the policies and decisions of the CITY OF INGLESIDE, TX City Council as the City's primary administrator.
5. Mayor Adame and the City Council are tasked with appropriating, reviewing, and implementing the CITY OF INGLESIDE, TX Police Department budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.
6. Chief Tammy Burr is the Chief of Police of the CITY OF INGLESIDE, TX and the primary policymaker tasked with creating, implementing, and reviewing the CITY OF INGLESIDE, TX Police Department policies, procedures, practices, and customs.
7. The CITY OF INGLESIDE, TX may be served by and through Mayor Oscar Adame, at the CITY OF INGLESIDE, TX City Hall, 2671 San Angelo, P.O. 400, Ingleside, TX 78362 or wherever he may be found.
8. Defendants **GARY HARVEY AND DAVID PIPER** were police officers employed by the CITY OF INGLESIDE, TX Police Department and at all times material herein were police officers acting in the course and scope of their employment for the City of Ingleside, TX. They may be served at the following addresses:

    Gary Harvey: 352 S. 8th St., Aransas Pass, TX 78336-4048.

    David Piper: 2175 W. Wheeler, Apt. 221, Aransas Pass, TX 78336-4779 or wherever they may be found. Defendants are being sued in their individual capacity.

## III.
## JURISDICTION

9. The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.
10. This Court also has jurisdiction over this suit under 42 U.S.C. § 1983.
11. Venue is also appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in City of Ingleside, San Patricio County, Texas, which is in the Corpus Christi Division of the Southern District of Texas.

## IV.
## FACTS AND ALLEGATIONS

12. On 27 February 2021, CHRISTOPHER M. SLOAN had his constitutional rights violated when he was pepper sprayed excessively by Defendant GARY HARVEY AND DAVID PIPER of the CITY OF INGLESIDE, TX Police Department.
13. On information and belief, the incident was captured on body camera device(s) and building security cameras.
14. Christopher Sloan, a lifelong resident of the state of Florida, on information and belief, came to the state of Texas sometime in 2020 or early 2021 to work as a construction worker.
15. In the wee hours of the morning of 27 February 2021, Mr. Sloan was arrested for Public Intoxication at a location unknown but within the city limits of the City of Ingleside, TX.
16. Following his arrest, Mr. Sloan was "subsequently placed in one of the City's temporary holding cells…[where] [w]hile being held, an incident involving use of force occurred."[5]
17. The Use of Force Report indicates that in Ingleside Police Department Case No. 2100003367, Mr. Sloan was pepper sprayed at approximately 0301, and the report of said use of pepper spray was made at approximately 0349.[6]

---

[5] This reference and all subsequent quotes are attributed to the Use of Force Report in Exhibit A and/or the Disciplinary Action Forms and related Attachments in Exhibits A and B. All citations will be to the respective pages of those documents.
[6] Exhibit A, at 1.

18. On information and belief, at some point during the time that Mr. Sloan was in the holding cell, he began yelling and kicking the door of the holding cell.

19. On information and belief, Defendant Harvey became enraged by Mr. Sloan's behavior and pepper-sprayed him two times at a distance of four to seven feet, for approximately one second each time, according to his Use of Force Report.[7]

20. On information and belief, at some point, Defendant Piper activated his Conducted Energy Device (CED) — on information and belief, commonly called a "taser" — and threatened Mr. Sloan with it to compel his compliance.

21. Defendant Harvey noted in this report that Mr. Sloan allegedly "[e]ngaged in or indicated the intent to engage in physical resistance" and "[e]ngaged in or indicated the intent to engage in aggressive physical resistance."[8]

22. Defendant Harvey indicated in this report that the "Use of Force/Control Necessary to…(checked box) Defend Self…and Accomplish Official Purpose (explain): Hurting himself by kicking cell door."[9]

23. The "Reporting Officer" section of the form bears the name "Gary Harvey" in the related box, while the section relating to "Supervisor's Signature" bears the signature of Defendant David Piper, on information and belief.

24. On information and belief, Defendant Piper did not complete a separate Use of Force Report for the incident with Mr. Sloan.

### *Disciplinary Action Taken by the City of Ingleside and Related Investigation*

25. On 19 March 2021, Chief Tammy Burr of the City of Ingleside, TX Police Department dismissed both Defendants Harvey and Piper, indicating that both had "failed to properly perform [their] duties as [peace officers] with the Department."[10] Defendant Piper was also determined to have been on a "6 month probation" and "…failed to properly perform his duties as…Patrol Sergeant."[11]

---

[7] *Ibid.*
[8] *Ibid.*
[9] *Ibid.*
[10] Exhibit A, at 2; Exhibit B, at 1.
[11] Exhibit B, at 1.

26. Chief Burr noted in each Defendant's respective Disciplinary Action Form that "The City of Ingleside is an at-will employer. Termination is the results [sic] of this occurrence."[12] Both forms are signed by the respective Defendant (as employee), Chief Burr (noted under "Supervisor Signature"), the HR person for the City of Ingleside, and the City Manager.[13]

27. According to the Attachment to each Defendants' Disciplinary Action Form, Chief Burr noted that "[a]n initial review of the reports and other available evidence surrounding this incident raised great concern."[14] Each Defendant was thereafter put on paid administrative leave to allow the City to conduct an Administrative Investigation.[15]

28. Both Defendants were served signed Written Complaints per the Texas Local Government Code, given notice the City was contemplating disciplinary action, and given *Garrity* warnings on 8 March 2021.

29. Each defendant was thereafter given the following opportunities to interact with the Deparmtent as it conducted its investigation:

    a.    Given a response to respond in writing to the allegations described in the Complaint (each provided such response on 9 March 2021);

    b.    Given an opportunity to review body camera footage and building security camera footage to supplement or revise their statements by 16 March 2021 (each provided such revised response on 16 March 2021);

    c.    Each was provided with a Notice of Pre-Disciplinary Hearing on 17 March 2021, scheduled for the following day, 18 March 2021, at 1000 (Harvey) and 1030 (Piper); and

    d.    Each was provided the opportunity to meet with Chief Burr and HR Director Anna Kucera to explain or provide any additional information to be considered.[16]

30. At the conclusion of its Administrative Investigation, the City of Ingleside, TX determined Defendants Harvey and Piper had violated the following:

---

[12] Exhibit A, at 1; Exhibit B, at 2.
[13] *Ibid*.
[14] Exhibit A, at 3; Exhibit B, at 2.
[15] *Ibid.*
[16] *Ibid.*

    a. **"Falsification of timekeeping or other records" and "dishonesty:"** as their reports "did not accurately account for the events of the incident as evidenced through department body camera footage and building security camera footage of the incident."[17]

    b. **"Profanity, abusive language, or racial slurs:"** as Defendant Harvey "used profanity towards the subject after administering the OC spray."[18]

    c. **"Coercion, intimidation, or threats against citizens:"**
        1. **Defendant Harvey**: "continued to pursue the subject into the holding cell and held the OC spray in a threatening manner above the subject's head which would cause someone to believe it was going to be deployed again." The document further explains, "[y]our sole purpose after entering the cell appeared to be to get the blanket away from the subject, so you could spray him again with OC spray. At one point you began to unholster your Taser, even though you know this is not a viable option after a subject has been prayed [sic] with OC spray. You placed the Taser back into the holster once Sgt. Piper told you "no."
        2. **Defendant Piper:** "You activated your CED (Conducted Energy Device) in a manner inconsistent with Police Department Policy. By your own admission during the Pre-Disciplinary Hearing, you stated you did not intend to use the CED, but just pulled it, and activated it, to threaten the arrested person to comply with your orders. This leads one to believe that you were using your position and the CED as a threat, although you knew that it was not a viable option as the next level of force in the force continuum."[19]

    d. **"Unsatisfactory performance or conduct:"** "During this incident you failed to employ the standards for professional behavior."[20]

    e. **"Inefficiency, incompetence, or neglect of duty,"** noting that the "use of force was not reasonable under the circumstance or in compliance with the Ingleside Police Department Use of Force Policy. Your actions/inactions showed a deliberate indifference for the health and welfare of an arrested person in the City's custody. You failed to de-escalate the situation…and used force that was not reasonable under the circumstances."[21] Defendant Piper's form specifically notes that he was the only supervisor on duty and that he "showed deliberate indifference and failed to intervene at the onset, which could have prevented the situation from escalating."[22]

    f. **"Insubordination or other disrespectful or unprofessional conduct,"** noting that frm. Officer Harvey "…failed to act promptly to assist an arrested person in the City's custody by allowing him to suffer through the effects of OC (Oleoresin Capsicum) Spray and failing to provide any remedy to him for a total of 13 minutes."[23]

    g. **"Discourteous treatment of the public,"** writing, "Integrity is indispensable to the position of a police officer, and any one Officer's misconduct undermines that integrity. The discourteous treatment, inattentiveness, and unprofessional conduct administered to the arrested

---

[17] Exhibit A, at 3; Exhibit B, at 2.
[18] *Ibid.*
[19] Exhibit A, at 3; Exhibit B, at 3.
[20] Exhibit A, at 4; Exhibit B, at 3.
[21] Exhibit A, at 4; Exhibit B, at 3.
[22] Exhibit B, at 3.
[23] Exhibit A, at 4; Exhibit B, at 3.

person on February 27, 2021 places great harm on public service and exposes the City of Ingleside to potential liability."[24]

31. At some point thereafter, on information and belief, the matter was referred to and investigated by Mr. Samuel Lankford, a Texas Ranger.

32. Ranger Lankford met with Mr. Sloan and Counsel for Plaintiff to investigate the incident at a job site in Corpus Christi where Mr. Sloan was working at the time.

33. Ranger Lankford took a statement from Mr. Sloan and subsequently turned over a criminal case to the San Patricio County District Attorney's Office, the prosecuting authority with criminal jurisdiction in San Patricio County.

34. The Grand Jury of San Patricio County indicted Defendant Harvey for Official Oppression in Cause No. S-21-3142CR, styled *The State of Texas v. Gary Harvey*. On information and belief, that indictment was dismissed, with Defendant Harvey being re-indicted for the same offense under Cause No. S-22-3263CR. On information and belief, Defendant Piper was not indicted for this incident.

35. On information and belief, the criminal case against Defendant Harvey is scheduled for its next setting in March.

V.

**CAUSES OF ACTION**

**COUNT ONE - EXCESSIVE FORCE**

**Violation of the Fourth Amendment Pursuant to 42 U.S.C. §1983 Against Defendants Harvey and Piper**

36. Mr. Sloan repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

37. For clarity, reasonable suspicion "must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion…The officer, of course, must be able to articulate something more than an

---

[24] Exhibit A, at 4; Exhibit B, at 3.

'inchoate and unparticularized…'hunch.'" *Goodson,* at 736 (citing *United States v. Michelet*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc)).

38. Probable cause, by contrast, "is present when the totality of the circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.*, at 740 (citing *Vance v. Nunnery*, 137 F.3d 270, 276 (5th Cir. 1998 (quoting *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996)).

39. Accordingly, Defendants Harvey and Piper Santos had no reasonable suspicion that Mr. Sloan had committed any other crime besides the Public Intoxication (PI) for which he was already in custody.

40. Annoying as they may be, an pre-trial detainee yelling and kicking a door — without causing damage — are not crimes in the state of Texas.

41. Defendants Harvey and Piper had ***no reason whatsoever*** to threaten Mr. Sloan with the use of their CEDs (tasers) or, in Defendant Harvey's case, to deploy his pepper spray into Mr. Sloan's eyes repeatedly.

42. Defendants ***most definitely*** had no justification whatsoever for using force of any kind, let alone less-than-lethal force of the magnitude threatened by a CED or taser and actually inflicted here by pepper spray.

43. Defendants Harvey and Piper, acting under color of law, deprived Mr. Sloan of the rights and privileges secured him by the Fourth and Fourteenth Amendments to the United States Constitution to be free from illegal and unreasonable seizures by the use of force.

44. Accordingly, Mr. Sloan commences this action pursuant to 42 U.S.C. § 1983.

45. "In order to present a successful claim of excessive force under § 1983, the plaintiff must show (1) an injury; (2) that resulted directly and only from a use of force that was excessive to the need of force; and (3) that the use of force was unreasonable under the circumstances." *Sullivan v. Allred,* 297 Fed. Appx. 339, 342 (5th Cir. 2008) (citing *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir. 2008), *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008), and *Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir. 2007) (citing *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005)(see also *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)).

46. Mr. Sloan was unquestionably injured in his pepper spraying by Defendant. His injury was visible, on scene, as he reacted in a manner evincing pain. As the Fifth Circuit has opined, "the eggshell skull rule is applicable in 42 U.S.C. § 1983 cases," recognizing that "a tort-feasor [ — here, Defendants Harvey and Piper —] takes his victim as he finds him." *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018). (citing *Dunn v. Denk*, 54 F.3d 248, 251 (5th Cir. 1995), *rev'd on other grounds* 79 F.3d 401 (5th Cir. 1996) (en banc); *see also Koch v. United States*, 857 F.3d 267, 274 (5th Cir. 2017).



47. With respect to the injury, significant injury is not required, per se; however, the injury must be "more than de minimis." *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017), (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citing *Harper v. Harris County, Tex.*, 21 F.3d 597, 600 (5th Cir. 1994)), but "the injury must be more than *de minimis*," (citing *Santos v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999)).
48. Mr. Sloan's injury resulted directly and only from a use of force that was excessive to the need of force, to wit: being tased when he was not posing any threat to Defendant, *visibly and obviously* unarmed and restrained in a holding cell.
49. The excessiveness of the force was clearly unreasonable, particularly considering Mr. Sloan was not only not posing a threat to Defendant, but he was literally just sitting in his cell, yelling and kicking the cell door when he was accosted. He was not taking or making

any aggressive stances, movements, or actions when Defendants decided to unjustifiably threaten and pepper spray him.

50. "The relationship between the need and the amount of force used" must be considered and assessed by the officers using force to "effectuate [a] subject's compliance." *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012) (quoting *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (see also, *Hanks v. Rogers*, 853 F. 3d 738 (5th Cir. 2017)).

51. ***An officer tasing, striking, or otherwise violently slamming an arrestee who is not actively resisting arrest is a constitutional violation***. *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, at 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden,* 139 S. Ct. 69, 202 L.Ed. 2d 23 (2018)(emphasis added).

52. Fifth Circuit case law establishes that the degree of force an officer can employ is reduced when an arrestee is not actively resisting arrest. *Id.*

53. Mr. Sloan was not actively, passively, or otherwise resisting arrest when forcefully accosted, threatened, and pepper sprayed by Defendants.

54. In determining whether the officer's use of force was "objectively reasonable," courts utilize a three-factor test outlined in the seminal Supreme Court case *Graham v. Connor:*

   a. *Severity of the crime;*
   b. *Immediate threat;* and
   c. Whether the subject is *actively resisting* or *attempting to evade arrest by fleeing. Graham v. Connor,* 490 U.S. 386, 396 (1989).

55. Analyses surrounding whether a particular use of force was objectively reasonable require "a careful balancing of the nature and quality of the intrusion on the individual's…interests against the countervailing governmental interests at stake…[requiring] careful attention to the facts and circumstances of each particular case." Seth Stoughton, et al., Evaluating Police Uses of Force (2020) (citing *Graham v. Connor*, at 396).

56. "Reasonableness" is judged from the perspective of a *reasonable officer on the scene*, as opposed to with the "20/20 vision of hindsight." *Ibid* (citing *Graham v. Connor*, at 396)(emphasis added).

57. Under *Graham,* courts are charged to rely on what a "reasonable officer" would have perceived, irrespective as to whether the officer *actually* perceived it that way. *Ibid* (citing *Graham v. Connor*, at 396).

58. As to the three elements of the *Graham* objective reasonableness test, **none** of the three factors are satisfied in favor of Defendants.

59. At the point Defendants perceived Mr. Sloan, he was allegedly yelling and kicking his cell door. She had not been accused of a crime above the alleged Class C misdemeanor of public intoxication. As such, there is **no** severity of any crime because no additional crime had allegedly been committed.

60. Consequently, no force **whatsoever** was justified. However, **even if** Mr. Sloan had committed resisting arrest— a misdemeanor under Texas law — the Fifth Circuit has said that the "severity" factor of *Graham v. Connor* "militated against the use of force where the alleged crime was a misdemeanor," rendering Defendants' use of force wholly unjustified and excessive. *Reyes v. Bridgwater*, 362 F.App'x 403, 407 n.5 (5th Cir. 2010).

61. The other two factors, however, also weigh heavily against Defendants.

62. Mr. Sloan was not an immediate threat, as he was merely sitting in his cell, yelling and kicking the cell door when he was accosted and pepper sprayed. He made no aggressive movements towards Defendants and was obviously unarmed.

63. Mr. Sloan was also not actively or passively resisting Defendants or attempting to flee or evade arrest, ***particularly because he was already restrained in a holding cell***. Even after Defendants began accosting him, on information and belief, Mr. Sloan did not fight or resist them, despite Defendant Harvey falsely claiming he needed to pepper spray him to protect himself. He was most certainly not attempting to flee either.

64. The fact that no crime besides public information had been committed or even suspected and Mr. Sloan was not a threat whatsoever makes it clear that Defendants' belief that force was needed and the accompanying use of force were completely unreasonable and the force completely excessive. As the Fifth Circuit opined in *Hanks*, "a reasonable officer on the scene would have known that suddenly resorting to physical force as [Defendant Harvey] did would be clearly excessive and clearly unreasonable." *Hanks*, at 745.

65. The *Hanks* court opined further, noting "…clearly established law demonstrated that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance…" *Id.*, at 747.

66. Mr. Sloan suffered physical injury, pain, and mental anguish as a direct result of the brutal and excessive force used against him.
67. Defendant Harvey caused Mr. Sloan to endure extraordinary pain and suffering by accosting and pepper spraying him multiple times without cause or justification.
68. These injuries were only caused by this accosting, threatening, and pepper spraying and not by any other means.

## COUNT TWO

### Claim Under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution against Defendants Harvey and Piper

69. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-68 above as though fully delineated below with respect to each cause of action.

### Theory of Liability

70. The Defendants, in combination and individually, acting under color of law deprived Christopher Sloan of the rights and privileges afforded him under the Fourteenth Amendment to the United States Constitution, as well as those afforded under other laws of the United States.
71. This deprivation occurred when Defendants Harvey and Piper, failed to provide adequate and proper medical treatment to Mr. Sloan despite being aware that he was in excrutiating pain after being pepper sprayed, and through deliberate indifference to his obvious, serious medical needs.
72. This deprivation violated 42 U.S.C. § 1983, the stated amendments to the U.S. Constitution, and related federal laws.
73. Defendants, in combination and individually, took no steps whatsoever to render Mr. Sloan medical care after his repeated pepper spraying and their observation of his pain for approximately thirteen (13) minutes.

74. To prove a claim of deliberate indifference, a pretrial detainee is required to show "(1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference."[25]

75. Deliberate indifference is proven when a plaintiff makes evident that officials "refused to treat him…or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[26]

76. The "substantial risk" must be obvious in order to infer the official denying medical care had actual knowledge of the risk.[27] "Negligent or even a grossly negligent response to a substantial risk of harm" is insufficient to support an inference of deliberate indifference.[28]

77. "[A] prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious."[29]

78. A plaintiff may prove the official's requisite knowledge of a substantial risk in the customary manner any other question of fact may be proven, including via inference from circumstantial evidence.[30]

79. Serious medical needs are those needs for which a treatment regimen has been recommended or those for which the need for care is *so apparent* that laymen (i.e., non-medical personnel) recognize that treatment is necessary.[31]

80. The facts which substantiate that the elements of § 1983 have been met were previously delineated above, particularly with respect to the City's Administrative Investigation finding that both Defendants "allow[ed] him to suffer through the effects of OC (Oleoresin Capsicum) Spray and failing to provide any remedy to him for a total of thirteen (13) minutes.

81. Defendants Lozano, Becerra, and Solis, in combination and as individual defendants, as applicable, intentionally and with deliberate indifference, deprived Mr. Sloan of his clearly established federal constitutional right to be free from cruel and unusual punishment.

---

[25] *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 755 (5th Cir. 2001).
[26] *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)).
[27] *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006).
[28] *Thompson v. Upshur Cty.*, 245 F.3d 447, 458-59 (5th Cir. 2001).
[29] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).
[30] *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).
[31] *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006)(emphasis added).

82. Defendants Harvey and Piper each had an affirmative duty to make sure that Mr. Sloan received the medical treatment he so desperately needed, yet they failed to ensure that happened. All of the Defendants' actions far exceeded mere negligence, as they were aware of his medical needs, as they *observed* him in medical distress and neither assisted him nor got him medical treatment for thirteen (13) minutes, watching him suffer instead. His serious medical needs were obvious.

## QUALIFIED IMMUNITY UNDER § 1983

83. City Employees may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:
    a.   The individual's acts deprived the party of constitutional rights under color of law;
    b.   The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and
    c.   Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.
84. This case is uncommon with respect to the fact that qualified immunity is clearly undermined here by the City of Ingleside Police Department's own decision following its Administrative Investigation, as encapsulated by Exhibits A and B and referenced *passim* in this Complaint. Accordingly, such incongruity with the City of Ingleside, TX's departmental policies and procedures — as determined by the Department itself — are proof positive that the application of qualified immunity is inappropriate in this instance.
85. "In 'an obvious case,' [*Graham v. Connor*] and [*Tennessee v. Garner*] may supply the "clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308, 193 L. Ed. 2d 255 (2015)) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (*per curiam*)); *see also Cooper*, 844 F.3d at 524. This case is an obvious case of excessive force and violation of the Fourth Amendment right against unreasonable searches and seizures, because Mr. Sloan was merely suspected of committing a Class C offense (public intoxication); Defendant had developed no reasonable suspicion that he had committed any crime beyond

that Class C accusation; and Defendant had developed no justification whatsoever to use force, making the brutal and excessive force used completely unjustifiable.

86. Defendants Harvey and Piper, acting under color of state law, deprived Mr. Sloan of his civil liberties, without due process of law, by accosting and pepper spraying him unlawfully and unreasonably with clearly excessive force.

87. The Fifth Circuit has, in denying qualified immunity for officers, "placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force." *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016). The Court opined further to that end in the *Hanks* case, noting that "our case law clearly established that [the officer] should have continued to verbally negotiate — including by threatening force, ***if necessary*** — rather than abruptly resorting to 'actual' physical force." *Hanks*, at 748 (emphasis added).

88. No reasonable official could have believed that accosting and pepper spraying Mr. Sloan was lawful, let alone humane or remotely appropriate in this circumstance. "Any reasonable officer should have realized that [Officer Harvey's unlawful, unreasonable pepper spraying of Mr. Sloan] offended the Constitution." *Taylor v. Riojas*, 141 S.Ct. 52, at 54 (2020).

89. The acts of Defendants Harvey and Piper were unreasonable under the circumstances when viewed objectively.

90. Defendant Harvey was deliberately indifferent to the excessive risk of harm to Mr. Sloan in the actions he took. Such acts deprived Mr. Sloan of and violated his clearly established constitutional rights and were not objectively reasonable.

91. The acts of Defendant Harvey and Piper clearly violated established rights under the Constitution and statutes. A reasonable person would have known that Mr. Sloan's constitutional rights of protection against unreasonable searches and seizures were enshrined by the Fourth Amendment to the Constitution and that Defendants' actions were violative of such rights.

92. The acts of Defendants were salient in their wrongness and grossly offensive. Only an officer violating the law or who is plainly incompetent would perform such an act as accosting and tasing a subject on whom he has no reasonable suspicion or probable cause beyond a Class C public intoxication offense, let alone subject to physical force. Thus, Defendants are liable to Plaintiff for the damages caused by their actions, which were the direct and proximate causes, in each count alleged above respectively, of Mr. Sloan's injuries.

## VIII.
## DAMAGES

93. Mr. Sloan repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

94. Plaintiff seeks monetary relief and for judgment of all the other relief to which he deems himself entitled.

95. Mr. Sloan's injuries were foreseeable and directly and proximately caused by the excessive force used against him.

96. Mr. Sloan is thus entitled to recover all actual damages allowed by law. The Defendant's conduct shows malice, wanton disregard, and reckless or callous indifference to Plaintiff's constitutional rights.

97. As a direct and proximate result of the occurrence underlying this lawsuit, Mr. Sloan suffered:

   a. Physical injuries, including impairment;
   b. Physical pain and suffering;
   c. Deprivations of her liberty;
   d. Emotional distress, torment, and mental anguish; and
   e. Reasonable and necessary medical care to treat her injuries in the past and future.

98. Plaintiff seeks to recover reasonable attorney's fees and costs of court, pursuant to 42 U.S.C. § 1983 and § 1988.

## IX.
## ATTORNEY'S FEES

99. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## X.
## JURY DEMAND

100. Plaintiff respectfully requests a jury trial in this matter.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court.

Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:   (361) 887-1031
Facsimile:    (361) 887-0903


   */s/ Matthew S. Manning*
MATTHEW S. MANNING
State Bar No.: 24075847
Southern Dist. ID No. 3504172
General Correspondence Email:
E: matt@wcctxlaw.com

ATTORNEY FOR CHRISTOPHER M. SLOAN